UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

Civ. No. 2:17-583-FtM-PAM-NPM

Loren D. King, II,

        Plaintiff,

v.                                              **MEMORANDUM AND ORDER**

Fawcett Memorial Hospital, Inc.

        Defendant.
_____

This matter is before the Court on Defendant's Motion for Summary Judgment. For the following reasons, the Motion is granted.

**BACKGROUND**

This is an employment-discrimination case. In January 2014, when he was 54 years old, Plaintiff Loren D. King II was hired as a nurse in the intensive care unit at Defendant Fawcett Memorial Hospital in Port Charlotte, Florida. (2d Am. Compl. (Docket No. 37) at 1.) At that time, King signed an acknowledgement of the Hospital's Code of Conduct, which included its zero-tolerance policy for illegal substance use. (Pl.'s Dep. (Docket No. 79-1) 58.) Hospital policy prohibits employees from being at work with any measurable quantity of an illegal drug or non-prescribed controlled substance in their blood or urine. (Hospital Substance Use Policy (Docket No. 78-1) at 2-3.) The collective bargaining agreement between the nurses' union and the Hospital included the same prohibition. (Docket No. 79-7 at 2.)

According to the Hospital, "[a] 'drug diversion' occurs when a nurse or Hospital employee transfers legally prescribed controlled substances from the patient for whom it was prescribed to another person, including the employee himself, for any illicit use." (Def.'s Supp. Mem. (Docket No. 78) at 7.) The Hospital uses Pyxis, an automated medication-dispensing system, to ensure that medications are distributed to patients safely and efficiently. (Id. at 4.) On October 6, 2015, a routine Hospital audit reflected that King may have removed two units of propofol, an opiate, from the Pyxis system on October 3, 2015. (Id. at 6.) Kelli Steiner-Dawson, King's nurse manager, discovered this incident on the audit and was concerned that two units of the drug were removed within an hour of each other and that there was no record of whether the drugs were administered to a patient or wasted. (Steiner-Dawson Decl. (Docket No. 71-11) at ¶ 10; Pl.'s Dep. 37-38.)

A "charting error" is a missed scan indicating that a nurse did not administer a drug to a patient, or did not do so in a timely manner, or that the drug was wasted. (Steiner-Dawson Decl. at ¶ 1-2.) Steiner-Dawson was aware that King "had a significant pattern of charting errors and dispensing more drugs than other nurses." (Id.) She raised the issue of the missing drug with Sally Seymour, the Hospital's Chief Operating Officer. (Id. at ¶ 13.) The Hospital's Director of Pharmacy, Armando Soto, then brought the issue to the Hospital's Ad-Hoc Committee's attention on October 7, 2015. (Bryan Decl. (Docket No. 79-10) at ¶ 8.)

The Hospital requires a reasonable suspicion drug test for suspected drug diversion. (Def.'s Supp Mem. at 7.) The Ad-Hoc Committee determined that

2

reasonable suspicion existed, and required King to take a drug test when he reported to work on October 7, 2015. (Id.) At first King refused to do so, because he had used marijuana in the recent past. (2d Am. Compl. at 13.) He then changed his mind, told Hospital administrators that the test would be positive for marijuana, took the test, and failed, because he tested positive for marijuana. (Id.; Def.'s Supp. Mem. at 8.) Because of the Hospital's zero-tolerance policy for a failed drug test, Marcy Frisena, the Chief Nursing Officer, decided to terminate King's employment on October 16, 2015. (Def.'s Supp. Mem. at 8-9.) Steiner-Dawson informed King of Frisena's decision. (Steiner-Dawson Decl. at ¶¶ 14, 16.) The Hospital was also required to report King's positive drug test to the State Department of Health. (Def.'s Supp. Mem. at 9.)

After failing the drug test, but before he was terminated, King contacted the Intervention Project for Nurses ("IPN"). (Pl.'s Reply Mem. (Docket No. 83) at 16.) IPN works with the State of Florida to provide "education, support and monitoring to nurses with impairing conditions such as substance use disorders, psychiatric and physical conditions. Nurses are most often referred to IPN by nursing employers due to potential safety to practice concerns." Intervention Project for Nurses, About, https://www.ipnfl.org/about/ (last visited Dec. 9, 2019). King joined IPN, attempting to keep his job and his license. (2d Am. Compl. at 6.) But he refused to sign a five-year contract with IPN restricting his work with narcotics because of his marijuana use. (Pl.'s Reply Mem. at 14.)

King believes he was terminated unfairly. He attributes the charting error to his undermedicated attention deficit disorder, Steiner-Dawson's animus towards him, and

3

his difficulty in using the Hospital's charting system. Liberally construing King's pro se pleadings, he brings the following claims: disability discrimination under the Americans with Disabilities Act ("ADA") and the Florida Civil Rights Act ("FCRA"), sex discrimination under the FCRA, and age discrimination under the Age Discrimination and Employment Act ("ADEA") and the FCRA.

**DISCUSSION**

Summary judgment is proper only if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999) (citation omitted).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). When opposing a motion for summary judgment, the nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials and "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citation omitted).

4

### A.  Disability Discrimination

A federal discrimination plaintiff must first exhaust the administrative remedies available through the EEOC.  Green v. Elixir Indus., Inc., 152 F. App'x 838, 840 (11th Cir. 2005).  While "the scope of an EEOC complaint should not be strictly interpreted," the "judicial complaint is limited by the scope of the EEOC investigation which can be reasonably expected to grow out of the charge."  Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004) (quotation omitted).  A failure to include a discrimination claim in the EEOC charge thus precludes a plaintiff from bringing that claim in a federal lawsuit, also known as procedural default.  King failed to exhaust the administrative remedies for his disability claim, and thus it is "procedurally deficient."  Green, 152 F. App'x at 841.  Although he checked "disability" on his EEOC charge, his narrative exclusively discussed sex discrimination.  (Docket No. 78-2.)

Even if King had exhausted his administrative remedies as to him claim of disability discrimination, he is unable to establish a prima facie case of discrimination.  "To establish a prima facie case of discrimination under the ADA, a plaintiff must show that at the time of the adverse employment action, []he (1) had a disability, (2) was a qualified individual, and (3) was subjected to unlawful discrimination because of h[is] disability."  Adigun v. Express Scripts, Inc., 742 F. App'x 474, 476 (11th Cir. 2018).

King cannot establish that he was subject to unlawful discrimination because of his attention deficit disorder, which is the only disabling condition he alleges.  King claims that his charting improved when he was able to use a computer on wheels.  (2d Am. Compl. at 4-5, 8.)  He contends that he notified Steiner-Dawson and his previous

5

manager of this but was told that a computer on wheels was "not in the budget." (Id. at 5.) But King was not fired because of the missed propofol scans or any other charting error. On the contrary, King knowingly violated Hospital policy by using an illegal drug and failing a drug test. Reasonable accommodations in charting would not change the test's results. The Hospital is entitled to summary judgment on this claim.

**B.    Age Discrimination**

King's age discrimination claim is likewise untenable, because he again failed to exhaust his administrative remedies. See Green, 152 F. App'x at 840. Although King checked "age" on his EEOC charge, his narrative is silent on any claim related to age. (Docket No. 78-2.) But again, even if King had exhausted his remedies, this claim still fails.

To allege a prima facie case of age discrimination in this case, King must establish that: (1) he was over 40 years old; (2) he suffered an adverse employment action; (3) a substantially younger person replaced him; and (4) he was qualified to do the job from which he was terminated. Damon v. Fleming Supermkts. of Fla., Inc., 196 F.3d 1354, 1359 (11th Cir. 1999). King meets the first two prongs of the test, because he was 56 years old and was terminated. He argues that he was replaced with "two new younger nurses making half [his] wage," but provides no further details or facts to support this bald allegation. (2d Am. Compl. at 21.) Importantly, he does not state that either of those nurses was under 40 years old, or provide any proof in that regard. Moreover, although King had the requisite R.N. degree, he was not qualified for the job because he violated the Hospital's drug policy.

6

But even had King established a prima facie case, his age-discrimination claim would nevertheless fail. Without direct evidence of discrimination, the McDonnell Douglas burden-shifting framework applies to establish a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The defendant must present a "legitimate, nondiscriminatory reason" for terminating the employee. Id. at 802. The burden then shifts back to the plaintiff to show that discrimination motivated the adverse employment action, and that the stated reason for the adverse employment action was merely pretextual. Duckworth v. Pilgrim's Pride Corp., 764 F. App'x 850, 853–54 (11th Cir. 2019). "Put frankly, employers are free to fire their employees for 'a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'" Flowers v. Troup Cty., Ga., Sch. Dist., 803 F.3d 1327, 1338 (11th Cir. 2015) (quoting Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984)). The Hospital presents a clear, nondiscriminatory reason for its actions. Therefore, King must establish that dismissing him for failed a drug test was only pretext for terminating him because the Hospital was biased against his age. King presents no evidence that his age was a factor in his termination.

Further, the Hospital hired King at age 54 and fired him at 56. It is unrealistic to think that the Hospital hired King while a member of the protected class and then two years later developed an aversion to his age and terminated King because of it. See Oliver v. Schwan's Sales Enters., No. 96-4-CIV-OC-10C, 1997 WL 689434, at *5 (M.D. Fla. June 25, 1997) (explaining that when a plaintiff is hired and fired "within the

7

protected age group" it creates an "inference of nondiscrimination"). King's age discrimination claim fails.

## C. Sex Discrimination

To establish a prima facie case of sex discrimination under Title VII, King must demonstrate that he: (1) belongs to a protected class, (2) suffered an adverse employment action, (3) his employer treated him worse than other "similarly situated employees" who do not belong to that class; and (4) he qualified for the position. Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 842-43 (11th Cir. 2000). King and the similarly situated employee must be so "in all relevant respects" and "nearly identical" because the Court should not question the Hospital's reasonable decision. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) (citation and quotation omitted).

King again meets the first two prongs of the test: he is male and suffered the adverse employment action of termination. However, he fails to meet the last two prongs. King is unable to establish that a similarly situated female employee was treated better than he was. He alleges that another nurse, Robin Pitts, was similarly situated. (2d Am. Compl. at 16; Pl.'s Reply Mem. at 13.) This comparison is inaccurate. Pitts failed a drug test before working for the Hospital and was only hired by the Hospital after she complied with IPN. (Def.'s Supp. Mem. at 19.) She has not been suspected of

drug diversion at the Hospital and has never failed a drug test while working there. [1] (Id.)

King mentions, though not by name, another female nurse who "witnessed" his access to the alleged drug-diversion. (Pl.'s Reply Mem. at 6.) King argues that whenever a drug was dispensed, another Hospital employee had to "witness" it. (Id.) King claims that this female nurse was not drug-tested, implying that he was treated differently than a female nurse. (Id.) The witness nurse's gender does not change the fact that King was the registered nurse with access to the missing drugs and that he failed the drug test. Even if the female "witness" had also failed a drug test, King still would have failed his own test. Therefore, he cannot demonstrate a prima facie case of sex discrimination. This claim fails.

---

[1] King also mentions Sreeja Gopadasan as a nurse who missed scans and was "afforded due process," but he provides no other facts to show that she was similarly situated. (Pl.'s Reply Mem. at 18.)

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendant's Motion for Summary Judgment (Docket No. 78) **GRANTED**; and

2. The Second Amended Complaint (Docket No. 37) is **DISMISSED with prejudice**.

**The Clerk shall enter judgment accordingly, terminate all remaining deadlines as moot, and close the file.**

Dated: December 17, 2019

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge