[DO NOT PUBLISH]

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

_____

No. 20-10223
Non-Argument Calendar
_____

D.C. Docket No. 2:17-cv-00583-PAM-NPM

LOREN D. KING, II,

Plaintiff-Appellant,

versus

HCA, et al.,

Defendants,

FAWCETT MEMORIAL,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 24, 2020)

Before JORDAN, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

Loren King sued his former employer, Fawcett Memorial Hospital, Inc. (the "Hospital"), alleging that it unlawfully terminated his employment as a nurse based on his age, sex, and disability. The district court granted summary judgment to the Hospital, and King appeals. After careful review, we affirm.

## I.

The relevant facts are largely undisputed. The Hospital hired King, who has been diagnosed with major depression with attention-deficit disorder ("ADD"), as an ICU nurse in January 2014, when he was fifty-four years old. At the time he was hired, King signed an acknowledgement of the Hospital's Code of Conduct, which included its zero-tolerance policy for illegal-substance use. Hospital policy prohibited employees from being at work with any measurable quantity of an illegal drug or non-prescribed controlled substance in their blood or urine. The Hospital required employee drug testing based upon reasonable suspicion, including if an employee was suspected of diverting drugs that were intended for a patient.

On October 6, 2015, a routine Hospital audit reflected that King may have removed two units of propofol, an opiate, from the Hospital's automated medication-dispensing system on October 3, 2015, without "scanning" them to show what had happened with the drugs. Kelli Steiner-Dawson, King's nurse manager, discovered

this incident on the audit and was concerned that two units of the drug were removed within an hour of each other and that there was no record of whether the drugs were administered to a patient or wasted. Steiner-Dawson, who testified that King had a pattern of "dispensing more drugs than other nurses," raised the issue with higher-level management at the Hospital. Eventually, the Hospital's Ad-Hoc Committee determined that reasonable suspicion of drug diversion existed and so required King to take a drug test when he reported to work on October 7, 2015.

King initially refused because he self-medicated with marijuana. He then changed his mind and took the test, telling Hospital administrators that the test would be positive for marijuana. It was. Because King did not have a prescription for medicinal marijuana, he failed the drug test and violated the Hospital's zero-tolerance policy.[1] As a result, the Hospital's Chief Nursing Officer decided to terminate King's employment. Steiner-Dawson then informed King of the decision.

After the failed drug test but before he was terminated, another nurse at the Hospital told King that he could keep his job and nursing license by joining the Intervention Project for Nurses ("IPN"). IPN works with the State of Florida to provide education, support, and monitoring to nurses with substance-use disorders, among other things. King joined IPN, attempting to keep his job and his nursing

---

[1] Even if King had a prescription for medicinal marijuana, it appears that he still would have violated the Hospital's zero-tolerance policy, which prohibited marijuana "even when taken as prescribed by a physician."

license.  IPN offered him a "five-year co-occurring substance use disorder and mental health, abstinence-based monitoring advocacy contract," with a "12-month controlled substance access restriction based on having a history of suspected diversion from an employer."  King declined to participate in the program.

Following his termination, King sued the Hospital, alleging that he had been discriminated against based on his age, sex, and disability (ADD).  His allegations largely centered on Steiner-Dawson, his nurse manager.  He claimed that Steiner-Dawson disliked him for, among other things, his "charting" errors, which King attributed to being undermedicated for ADD, but did nothing to accommodate his disability or to improve his charting and instead tried to get him fired.  In August 2015, she allegedly tried to have him fired for workplace violence against another nurse, but King was not disciplined.  Several weeks later, according to King, Steiner-Dawson contrived to have him urine tested, which resulted in his termination.  King alleged the Hospital could have pursued less severe punishment, but it chose to terminate him, destroying his career and physical and mental welfare in the process, so it could hire younger nurses at lower wages.

The district court granted summary judgment to the Hospital, concluding that King had failed to exhaust his administrative remedies with regard to certain claims and that his claims otherwise failed on the merits.  King now appeals.

## II.

"We review *de novo* a district court's grant of summary judgment, viewing all the evidence, and drawing all reasonable inferences, in favor of the non-moving party." *Vessels v. Atl. Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, summary judgment is appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Both federal law and Florida state law prohibit employers from discriminating against their employees on the basis of age, sex, and disability.[2] *See* Age Discrimination and Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623(a); Title VII, 42 U.S.C. § 2000e-2(a); Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112(a); and Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10(1)(a). For age and disability discrimination, the plaintiff must prove that his age or

---

[2] FCRA claims are analyzed under the same framework as claims brought under Title VII, the ADA, and the ADEA. *See Mazzeo v. Color Resolutions, Int'l, Inc.*, 746 F.3d 1264, 1266 (11th Cir. 2014) ("Disability and age-related discrimination actions under the FCRA are analyzed under the same frameworks as the ADA and ADEA, respectively."); *Jones v. United Space Alliance, L.L.C.*, 494 F.3d 1306, 1310 (11th Cir. 2007) ("Because the FCRA is modeled on Title VII, Florida courts apply Title VII caselaw when they interpret the FCRA"). Accordingly, we won't separately discuss the FCRA in our analysis.

disability was a "but-for" cause of the adverse employment action—meaning it had a "determinative influence on the outcome" of the employer's decision.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (ADEA); *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996) ("The ADA imposes a 'but-for' liability standard.").  The standard for sex discrimination is more permissive.  The plaintiff must prove that his sex was at least a "motivating factor" in the employer's decision, even though other factors also may have motivated the decision.  *See* 42 U.S.C. § 2000e-2(m).  To meet these burdens, the plaintiff generally must introduce some evidence indicating that the employer's stated, non-discriminatory reason for its action is not credible and that the decision was actually motivated by unlawful discrimination.  *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010).

But "it is not our role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory motive."  *Id.* at 1266.  "The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."  *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984), *abrogated on other grounds by Lewis v. City of Union City, Ga.*, 918 F.3d 1213 (11th Cir. 2019) (*en*

*banc*).  The fact that an employee may have been treated unfairly is not enough unless the circumstances permit a reasonable inference of discrimination.

King devotes most of his brief to arguing that he was treated unfairly and that his nurse manager, Steiner-Dawson, had a vendetta against him.  Even if we accept these assertions as true, however, that does not mean he is entitled to a jury trial, because the inquiry is not the whether the employer's decision was "prudent or fair," but rather "whether unlawful discriminatory animus motivate[d] the decision." *Alvarez*, 610 F.3d at 1266.

Here, no reasonable jury could conclude that King's age, sex, or disability motivated the decision to terminate his employment.  The Hospital presented evidence that King was fired as an ICU nurse because he failed a drug test by testing positive for a non-prescribed controlled substance—marijuana—and therefore violated the Hospital's zero-tolerance policy, which prohibited being at work with any measurable quantity of an illegal drug or non-prescribed controlled substance in blood or urine.

King does not dispute that he failed the drug test or that he violated the zero-tolerance policy, which authorized termination for a failed test.  Although he questions the validity of the decision to drug test him, he does not identify a situation where a person outside of his protected classes committed a similar scanning error but was not drug tested for possible drug diversion.  Nor does he identify any other

nurse who violated the zero-tolerance policy but was not terminated.  The one person he identified failed a drug test before working at the Hospital and was only hired by the Hospital after she complied with IPN.  King, however, failed a drug test while working at the Hospital and then did not comply with IPN, so their situations are not comparable.  And there is no other evidence from which a jury could reasonably infer that the Hospital's legitimate, non-discriminatory reason for terminating his employment—that he violated the zero-tolerance drug policy—was not the true reason for its decision to terminate his employment.

For these reasons, we affirm the district court's grant of summary judgment in favor of the Hospital on King's claims of discrimination.[3]

**AFFIRMED.**

---

[3] Because we conclude that King's claims fail on the merits, we do not consider whether he adequately exhausted his administrative remedies.  *See Fort Bend Cty., Tex. v. Davis*, 139 S. Ct. 1843, 1850–52 (2019) (holding that Title VII's exhaustion requirements are not jurisdictional).